1   Alison M. Bernal (SBN 264629)
    alison@nshmlaw.com
2   NYE, STIRLING, HALE, MILLER & SWEET, LLP
    33 West Mission Street, Suite 201
3   Santa Barbara, CA 93101

4   Matthew D. Schelkopf (*pro hac vice* forthcoming)
    mds@sstriallawyers.com
5   Joseph B. Kenney (*pro hac vice* forthcoming)
    jbk@sstriallawyers.com
6   SAUDER SCHELKOPF LLC
    1109 Lancaster Avenue
7   Berwyn, PA 19312

8
    *Attorneys for Plaintiff and the Proposed Classes*
9
                    **UNITED STATES DISTRICT COURT**
10          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11  ZACH HUGHES, individually and on          Case No.: 5:24-cv-00912
    behalf of all others similarly situated,
12
                        Plaintiffs,           **CLASS ACTION COMPLAINT**
13          v.

14  TOYOTA MOTOR SALES, U.S.A., INC.,
    TOYOTA MOTOR CORPORATION, and        **DEMAND FOR JURY TRIAL**
15  TOYOTA MOTOR NORTH AMERICA,
    INC.,
16
                        Defendants.
17

18

19

20

21          Plaintiff Zach Hughes, individually and on behalf of all others similarly situated, brings

22  this action against Defendants Toyota Motor Sales, U.S.A., Inc., Toyota Motor Corporation,

23  and Toyota Motor North America, Inc. ("Defendants" or "Toyota"), by and through his

24  attorneys, and alleges as follows based on (a) personal knowledge, (b) the investigation of

25  counsel, and (c) information and belief.

26  / / /

27  / / /

28  / / /

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1
**CLASS ACTION COMPLAINT**

# I.    **INTRODUCTION**

1.    This consumer class action arises from a latent defect found in model year ("MY") 2014-2021 Toyota RAV4 vehicles (hereafter, the "Class Vehicles").[1]

2.    This action arises from Defendants' failure, despite their longstanding knowledge, to disclose to Plaintiff and Class Members that the Class Vehicles contain defectively designed and/or manufactured hinges ("the Defect") that cause the power liftgate to prematurely fail. When the Defect manifests, the power liftgate fails to open and close as intended, resulting in it staying open for extended periods of time. Additionally, the power liftgate can fail to fully close, resulting in it staying open and continuously beeping while driving.

3.    The Defect can cause damage to the power liftgate struts, actuators, and the vehicle's body structure, causing them to deform and/or tear.

4.    Additionally, Class Members often experience repeat failures of the hinges contained in the power liftgate because the Defect is also present in the replacement parts.

5.    Defendants actively concealed material facts regarding the Defect from Plaintiff and Class Members, including (i) that the Class Vehicles were prone to the Defect and require costly repairs to fix; (ii) that Class Vehicles are subject to repeat failures of the hinges contained in the power liftgate because the purported repairs do not actually fix the Defect; and (iii) that the existence of the Defect would diminish the intrinsic and resale value of the Class Vehicles.

6.    At all relevant times, Defendants knew, or through the exercise of reasonable care had reason to know, that the hinges contained in the power liftgate were defective and that the existence of this Defect would materially affect Plaintiff and the Class's (defined below) decision to purchase the Class Vehicles.

7.    Defendants have long been aware of the Defect. Despite their longstanding knowledge, Defendants have been unable or unwilling to adequately repair the Class Vehicles

---

[1] Plaintiff reserves the right to amend the definition of the Class Vehicles after conducting discovery.

**CLASS ACTION COMPLAINT**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

at no cost to Plaintiff and the Class when the Defect manifests.

8.     Defendants omitted and/or concealed the existence of the Defect to increase profits by selling additional Class Vehicles. Knowledge and information regarding the Defect were in the exclusive and superior possession of Defendants and its dealers, and this information was not disclosed to Plaintiff and members of the Class at the time of purchase, or otherwise.

9.     Based on pre-production testing, pre-sale durability testing, failure mode analyses, bench testing, warranty and post-warranty claims, consumer complaints on forums monitored by Defendants, and consumer complaints made to and by dealers, and directly to Defendants, Defendants were aware of the Defect and omitted the existence of and/or fraudulently concealed the Defect from Plaintiff and members of the Class.

10.     Defendants have also refused to take any action to correct this concealed Defect when it manifests in the Class Vehicles outside of the warranty period. Because the Defect can manifest shortly outside of the warranty period for the Class Vehicles—and given Defendants' knowledge of the Defect—Defendants' attempt to limit the warranty is unconscionable and unenforceable.

11.     As a result of Defendants' unfair, deceptive, and/or fraudulent business practices, owners and lessees of the Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendants were conducted in a manner giving rise to substantial aggravating circumstances.

12.     Had Plaintiff and other Class Members known of the Defect at the time of purchase or lease, they would not have bought or leased their Class Vehicles, or would have paid substantially less for them.

13.     This case seeks protection and relief for owners and lessees of the Class Vehicles for the harm they have suffered, and seeks redress for Defendants' breaches of express and implied warranties, Defendants' unfair, unlawful, and deceptive trade practices, and for common law fraudulent concealment and unjust enrichment.

**CLASS ACTION COMPLAINT**

## II.   JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 and jurisdiction over the Magnuson Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, a substantial part of the events or omissions giving rise to the claim occurred in this district, Defendants have advertised in this district, and Defendants have received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district.

16. This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the state of California and throughout the United States. Defendant Toyota Motor North America, Inc. is also incorporated in the state of California.

### III.   PARTIES

#### A.   Plaintiff

17.   Plaintiff Zach Hughes is a citizen of California, and currently resides in San Jose, California, and has at all times pertinent to this Complaint.

18.   Plaintiff Hughes purchased a new 2019 Toyota RAV4 on November 2, 2019, from Stevens Creek Toyota, an authorized Toyota dealership located in San Jose, California.

19.   Plaintiff Hughes purchased (and still owns) this vehicle, which is used for personal, and/or household use. His vehicle bears Vehicle Identification Number:

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

2T3EWRFVXKW040340.

20.    Prior to purchase, Plaintiff Hughes discussed the features of the vehicle with Toyota's sales representatives at Stevens Creek Toyota and reviewed the vehicle's window sticker. None of these sources disclosed the Defect to Plaintiff Hughes.

21.    In or around April 2021, when Plaintiff Hughes's vehicle had approximately 25,000 miles on the odometer, he noticed that the power liftgate did not open and close as intended. When Plaintiff Hughes pressed the button on his key fob to open the power liftgate, he heard metal cracking sounds coming from the struts and/or hinges as the power liftgate struggled to open. Further, the power liftgate would open halfway, close, then open again, and repeat this cycle numerous times, seemingly at random.

22.    In or around April 2021, Plaintiff Hughes brought his vehicle for service to Stevens Creek Toyota, where he reported the issue with the power liftgate. Stevens Creek Toyota failed to inspect the vehicle and failed to attribute the issue as the Defect, and instead instructed Plaintiff Hughes to lubricate the struts, which Plaintiff Hughes did.

23.    From 2021 until 2022, the metal cracking sounds that occurred when operating the power liftgate had only improved marginally from lubrication, but the power liftgate continued to struggle to open and close as directed and would open and close at unpredictable frequencies when Plaintiff Hughes attempted to load and unload cargo from his vehicle.

24.    In or around October 2022, when Plaintiff Hughes's vehicle had approximately 39,000 miles on the odometer, he noticed that the power liftgate's hinges and struts had snapped and observed a large gap in the left hinge and strut area:

/ / /

/ / /

/ / /

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101





**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

19    25.     Plaintiff Hughes again reported the issue with the power liftgate to Stevens

20  Creek Toyota and inquired if there was a recall for the issue. Stevens Creek Toyota informed

21  Plaintiff Hughes that there was no such recall and thus declined to perform any repairs.

22    26.     On March 9, 2023, Plaintiff Hughes brought his vehicle to Stevens Creek Toyota

23  for the third time to report the power liftgate issues in his vehicle. Stevens Creek Toyota

24  informed Plaintiff that the side hinge was torn and that, as a result, it was not lining up with

25  the vehicle's body. When Plaintiff Hughes inquired as to how the hinges had been torn, Stevens

26  Creek Toyota did not provide specific information as to the cause of the Defect.

27    27.     Stevens Creek Toyota referred Plaintiff Hughes to a body shop for the necessary

28  repairs.

**CLASS ACTION COMPLAINT**

28. Stevens Creek Toyota informed Plaintiff Hughes that he would be required to pay for the necessary repairs because he was no longer within the warranty period. Plaintiff Hughes had no choice but to pay for the repairs because he needed a working vehicle. Plaintiff Hughes paid $2,018.55 for repairs.

29. Even after obtaining the necessary repairs to Plaintiff Hughes's power liftgate, the power liftgate still fails to open and close, and/or opens and closes at unpredictable rates. He has further observed cracks in the hinges and heard loud noises when the power liftgate opens and closes.

30. Plaintiff Hughes has suffered an ascertainable loss as a result of Defendants' omissions associated with the Defect, including, but not limited to, out of pocket loss associated with the Defect and diminished value of his vehicle.

31. Neither Defendants, nor any of their agents, dealers, or other representatives informed Plaintiff Hughes of the existence of the Defect prior to purchase. Had Defendants disclosed the Defect to Plaintiff Hughes, he would not have purchased his vehicle, or would have paid less for it.

**B.    Defendants**

32. Defendants are automobile design, manufacturing, distribution, and/or service corporations doing business within the United States, and they design, develop, manufacture, distribute, market, sell, lease, warrant, service, and repair passenger vehicles, including the Class Vehicles.

33. Defendants Toyota Motor Sales, U.S.A., Inc. and Toyota Motor North America, Inc., are incorporated in California with their principal place of business at 6565 Headquarters Drive, Plano, TX 75024.

34. Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation, and the corporate parent of Toyota Motor North America, Inc. TMC, through its various subsidiaries and affiliates, designs, manufactures, markets, and distributes Toyota automobiles across the United States.

/ / /

**CLASS ACTION COMPLAINT**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

35. Defendant Toyota Motor North America, Inc. ("TMNA") is a California corporation headquartered in Plano, Texas as of May 2017. TMNA operates as a wholly owned subsidiary of Toyota Motor Corporation ("TMC"), the Japanese parent company, and is the corporate parent of Toyota Motor Sales, U.S.A., Inc. ("TMS"). TMNA oversees government and regulatory affairs, energy, economic research, philanthropy, corporate advertising and corporate communications for all of TMC's North American operations.

36. TMS is a California corporation headquartered in Plano, Texas. TMS is the U.S. sales and marketing division for TMC and TMNA, and oversees sales and other operations across the United States. TMS distributes Toyota parts and vehicles, which are then sold through Defendants' network of dealers. Money received from the purchase of a Toyota vehicle from a dealership flows from the dealer to TMS.

37. There exists, and at all times herein mentioned existed, a unity of ownership between TMC, TMNA, and TMS and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others. Adherence to the fiction of the separate existence of Defendants, would, under the circumstances set forth in this complaint, sanction fraud and/or promote injustice.

38. Upon information and belief, Defendants TMNA and TMS communicate with TMC concerning virtually all aspects of the Toyota products TMNA and TMS distribute within the United States, including appropriate repairs for pervasive defects, and whether Toyota will cover repairs to parts customers claim to be defective. Toyota's decision not to disclose the Defect to Plaintiff or the Class, or whether to cover repairs to the same pursuant to an extended warranty or goodwill program, was a decision made jointly by TMC, TMNA, and TMS.

39. TMS also oversees Toyota's National Warranty Operations (NWO), which, among other things, reviews and analyzes warranty data submitted by Toyota's dealerships and authorized technicians in order to identify defect trends in vehicles. Upon information and belief, TMS dictates that when a repair is made under warranty (or warranty coverage is requested), authorized dealerships must provide Defendants with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also retain the

**CLASS ACTION COMPLAINT**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

broken part in the event Defendants audit the dealership. NWO collects this information, makes it available to other Toyota divisions, and assists Toyota in determining whether particular repairs—such as those made to Plaintiff and the Class's power liftgates—are covered by an applicable Toyota warranty or are indicative of a pervasive defect.

40.     Toyota also jointly designs, determines the substance of, and affixes to its vehicles the window stickers visible on every new Toyota vehicle offered for sale at its authorized dealerships, including those omitting mention of the Defect and reviewed by Plaintiff and the Class prior to purchasing Class Vehicles. Toyota controls the content of these window stickers; its authorized dealerships have no input with respect to their content. Vehicle manufacturers like Toyota are legally required to affix a window sticker to every vehicle offered for sale in the United States pursuant to the Automobile Information Disclosure Act of 1958, 15 U.S.C. §§ 1231-1233, *et seq*. The Act specifically prohibits the removal or alteration of the sticker by anyone other than the ultimate purchaser prior to the sale of the car, including the dealership at which the vehicle is offered for sale.

41.     Toyota developed the marketing materials to which Plaintiff and the Class were exposed, including owner's manuals, informational brochures, warranty booklets and information included in maintenance recommendations and/or schedules for the Class Vehicles, all of which fail to disclose the Defect.

42.     Toyota also employs a Customer Experience Center, the representatives of which are responsible for fielding customer complaints and monitoring customer complaints posted to Toyota or third-party web sites: data which informs NWO's operations, and through which Toyota acquires knowledge of defect trends in its vehicles.

## IV.     TOLLING OF STATUTES OF LIMITATIONS

43.     Any applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiff and members of the Class could not have reasonably discovered the true, latent nature of the Defect until shortly before this class action litigation was commenced.

/ / /

**CLASS ACTION COMPLAINT**

44.     In addition, even after Plaintiff and Class members contacted Toyota and/or its authorized dealers regarding the Defect, they were routinely informed that the Class Vehicles were not defective.

45.     Defendants were and remain under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality, and nature of Class Vehicles, that the Defect is the result of poor manufacturing processes, workmanship and/or design, that it will require costly repairs, and that it diminishes the resale value of the Class Vehicles. As a result of Defendants' active concealment, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

## V.     FACTUAL ALLEGATIONS

46.     Toyota is the world's second largest automotive manufacturer and sells its vehicles across the United States through a network of nearly 1,500 dealers, including in California.

47.     Toyota brands itself as the maker of functional, reliable, and safe vehicles and spends millions of dollars on extensive marketing and advertising campaigns to convey that brand to consumers.[2]

### A.     The Power Liftgate in the Class Vehicles

48.     A liftgate is a door that covers the rear of a vehicle. The liftgate is the primary mechanism for accessing the back interior of the vehicle.

49.     Power liftgates are motorized and open and close electrically. Users can open a power liftgate by pressing a button in the car, on the key fob, or on the liftgate itself.

50.     Toyota touts the power liftgate as a utility enhancement.[3] When operational, the power liftgate allows consumers to access the rear interior of the Class Vehicles, allowing them

[2] https://www.toyota.com/usa/our-story/ (last visited February 15, 2024);
https://www.statista.com/statistics/261539/toyotas-advertising-spending-in-the-us/#:~:text=In%202022%2C%20Japanese%20car%20manufacturer,in%20the%20U.S.%20that%20year (last visited February 15, 2024).
[3] https://www.communitytoyota.com/how-to-use-toyota-power-liftgate/#:~:text=For%20your%20convenience%2C%20many%20Toyota,%2C%20or%20more%2C%20with%20ease (last visited February 15, 2024).

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## CLASS ACTION COMPLAINT

to perform a variety of tasks such as safely loading and unloading groceries, equipment, and more with ease.

51.     The power liftgate in the Class Vehicles is primarily attached to the vehicles by hinges and struts (actuators), which help to lift, support, and lower the power liftgate.

52.     Because the power liftgate is large and heavy, the components attaching the power liftgate to the vehicle must be structurally sound in order to safely withstand the force and weight of the liftgate opening and closing.

53.     Toyota states that "[a] liftgate is a part of the vehicle's body, so it should last the lifetime of the vehicle."[4]

**B.     The Power Liftgate Defect**

54.     The hinges contained in the power liftgate within the Class Vehicles suffer from a design and/or manufacturing Defect that ultimately results in the power liftgate failing to perform as intended.

55.     Upon information and belief, the Defect is contained in the hinges, which are manufactured with materials that are unable to withstand the force and weight required to open and close the power liftgate. Thus, as the power liftgate is used as intended, the hinges become bent and deformed, and begin to crack and fall out of alignment. When this happens, the power liftgate struggles to open and close because the integral components responsible for doing so (i.e., the hinges) are defective.

56.     The below photo depicts a normal hinge:

/ / /

/ / /

/ / /

---

[4] https://parts.olathetoyota.com/blog/toyota-liftgate-explained (last visited February 7, 2024).

**CLASS ACTION COMPLAINT**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1
2
3
4
5
6
7
8
9
10
11
12
13



14    Conversely, the below photo shows a bent hinge:
15
16
17
18
19



20
21
22
23
24
25
26
27
28

**CLASS ACTION COMPLAINT**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

57.     As such, when Plaintiff and the Class attempt to use the power liftgate, the hinges fail to operate correctly and will separate from their intended place on the body of the vehicle and begin to tear apart, which causes further damage to additional areas that surround the hinges, including the paint and body.

58.     As a result, the power liftgate in the Class Vehicles is unable to open and close as directed by Plaintiff and the Class. For example, when the button to open the power liftgate is pressed, the power liftgate only opens halfway and then abruptly closes, posing a threat of bodily harm. Further, the power liftgate opens and closes at random frequencies, even when Class Members do not press the button.

59.     Upon information and belief, the Defect is present in every 2014-2021 MY RAV4 vehicle sold in the United States.

60.     Had Toyota disclosed the existence of the Defect, Plaintiff and the Class would not have purchased their Class Vehicles, or would have paid substantially less for them.

**C.     Toyota's Knowledge of the Defect**

61.     Upon information and belief, Defendants regularly monitor the NHTSA databases as part of their ongoing obligation to identify potential defects in their vehicles. Examples of the complaints about Class Vehicles can be found below. The below sources establish that Defendants knew, or should have known, of the Defect based on publicly available information through (1) Defendants' own records of customers' complaints, (2) dealership repair records, (3) records from NHTSA, (4) warranty and post-warranty claims, (5) pre-sale durability testing and part sales, and (6) other various sources.

**1.     Defendants' Pre-Sale Testing and Quality Control Measures**

62.     Defendants perform rigorous product testing prior to releasing their vehicles to confirm, among other things, the vehicle's compliance with specification representations and marketing materials they intend to provide to the public, as well as compliance with state and federal regulations.

**CLASS ACTION COMPLAINT**

63. Defendants emphasize "total quality management" throughout the entire manufacturing process. Toyota further claims that it uses the "highest quality materials" and ensures that every vehicle meets "rigorous standards before it reaches the market".[5]

64. Defendants attribute their purported success to their testing methods and criteria.[6] Toyota states that it conducts comprehensive and extensive testing and validation processes.[7] In 2016 alone, Toyota invested over $1.2 billion in engineering design and development and manufacturing.[8] Upon information and belief, Toyota's product testing include testing of the power liftgate in the Class Vehicles.

65. Through their quality control measures, Defendants knew or should have known of the Defect described herein, yet have and continue to omit information surrounding the Defect to the Class.

**2.    Toyota's T-SB-0091-12**

66. On June 21, 2012, Toyota issued a Technical Service Bulletin ("TSB"), titled "Power Back Door Does Not Close Properly." *See* Exhibit 1.

67. The TSB applies to 2008-2012 MY Highlander and Highlander HV vehicles.

68. The TSB states that the vehicles exhibit "a condition where the Power Back Door does not close properly. The Back Door may get to the fully position and then reverse to the open position." The TSB further states that "a pop or clunk noise may heard" when the Power Back Door closes.

69. The condition in which this TSB refers causes damage to the hinges and surrounding area of the vehicle, creates a gap in the hinge area, and causes the Power Back Door to become misaligned.

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[5] https://www.longotoyota.com/blogs/4337/what-makes-toyotas-so-reliable/ (last visited February 15, 2024).

[6] https://www.maplewoodtoyota.com/research/new-car-testing.htm#:~:text=Toyota%20randomly%20selects%20completed%20engines,%2C%20pistons%2C%20valves%20and%20camshafts (last visited February 15, 2024).

[7] https://www.longotoyota.com/blogs/4337/what-makes-toyotas-so-reliable/ (last visited February 15, 2024).

[8] https://pressroom.toyota.com/toyota-us-operations-2016-brochure/ (last visited February 15, 2024).

**CLASS ACTION COMPLAINT**

70.     The purported fix consists of replacing the hinges, hatch assembly, and motor unit.

71.     The condition in which this TSB refers was the subject of a class action lawsuit.[9]

72.     Upon information and belief, the Defect is substantially similar to the issue identified in T-SB-0091-12 such that the TSB provided Defendants with knowledge of the Defect in the Class Vehicles. Further, the parts at issue in the TSB are substantially similar to the defective parts in the Class Vehicles.

### 3.     Toyota's T-SB-0120-18

73.     Defendants' knowledge of the Defect in the power liftgate in the Class Vehicles is also evidenced by their issuance of a second service action related to the Defect.

74.     On September 6, 2018, Toyota issued a Technical Service Bulletin ("TSB"), titled "Rear Hatch Hinge Corrosion". *See* Exhibit 2.

75.     The TSB applies to 2013-2017 MY RAV4 vehicles.

76.     The TSB states that the vehicles exhibit "corrosion around the rear hatch hinges. The corrosion may be present in varying degrees, ranging from paint blisters to red surface rust with perforation."

77.     This causes the hinges to not perform properly, by failing to open and close the power liftgate when directed, and requires new hinges to be installed.

78.     Upon information and belief, Defendants did not alert owners and lessees of the Class Vehicles to this TSB. Indeed, many owners and lessees of the Class Vehicles report having to pay for repairs, even after the issuance of the TSB.

79.     In addition, the TSB does not provide for reimbursement for prior repairs.

80.     Owners and lessees of the Class Vehicles have also reported that dealerships are not providing them with a revised part, and instead are installing the same defective part into their vehicle that will inevitably fail again.

/ / /

---

[9] See *Emerson v. Toyota Motor North America, Inc. et al*, No. 3:14-cv-02842 (N.D. Cal 2014). *See also infra* Section C.5.

**CLASS ACTION COMPLAINT**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1

2

3

4

5

6

7

8

9

10

11

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.   Complaints by Other Class Members

81.   Plaintiff Hughes's experiences are by no means isolated or outlying occurrences.

82.   All vehicle manufacturers, including Defendants, are legally obligated to routinely monitor and analyze NHTSA complaints in order to determine whether vehicles or automotive components should be recalled due to safety concerns, and Defendants thus have knowledge of any and all NHTSA complaints. See TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

83.   The following is just a small sampling of the many complaints submitted to NHTSA by Class Vehicle owners. These publicly available complaints evidence Defendants' knowledge of the Defect, the negative experiences encountered by Class Members, and the financial burden this places on them:[10]

**NHTSA ID Number:** 10730748
**Incident Date** June 27, 2015
**Complaint Date** June 27, 2015
**Vehicle Identification Number** JTMZFREV5FD****
**Summary of Complaint**
I WAS TRYING TO CLOSE THE HATCH WHICH IS TOO HARD TO PULL DOWN FOR A NORMAL PERSON AND I GOT IT ABOUT A FOOT TO BE ABLE TO CLOSE IT AND MY HAND SLIPPED OFF THE GATE AND THE GATE FLEW BACK UP AND KNOCKED MY LEFT EAR, HEAD AND GLASSES SO HARD IT CUT MY EAR AND HEAD AND MY EAR WAS SWOLLEN AND BRUISED IN WHICH THE EAR IS STILL BRUISED AND I HAVE A SCAR WHERE THE CUT IS ON MY EAR. I WAS UNABLE TO SLEEP OR PUT ANY PRESSURE AT ALL ON THAT SIDE OF MY HEAD

**NHTSA ID Number:** 10929666
**Incident Date** October 2, 2016
**Complaint Date** December 2, 2016
**Vehicle Identification Number** 2T3RFREVXGW****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2016 TOYOTA RAV4. WHILE THE VEHICLE WAS STATIONARY, THE AUTOMATIC LIFTGATE CRASHED DOWN ONTO THE CONTACT, WHICH CAUSED INJURY AND DISCOLORATION TO THE CONTACT'S SPINE. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 25,000. ..UPDATED 03/09/17 *BF CONSUMER STATED SHORTLY AFTER INJURY TOYOTA ISSUED A "LIMITED SERVICE CAMPAIGN" TO REMEDY OR REPLACE THE POWER BACK DOOR ECU (ELECTRONIC CONTROL UNIT). UPDATED 7/16/18*JB *TR

---

[10] The following complaints are reproduced as they appear online. Any typographical errors are attributable to the original author.

**CLASS ACTION COMPLAINT**

**NHTSA ID Number:** 11374381
**Incident Date** June 10, 2020
**Complaint Date** November 12, 2020
**Vehicle Identification Number** JTMYFREV6FD****
**Summary of Complaint**
LIFT GATE STRUT IS CAUSING MISALIGNMENT OF THE LIFT GATE, SO LIFT GATE SHIFTING AND UNABLE TO OPEN.

**NHTSA ID Number:** 11338536
**Incident Date** July 2, 2020
**Complaint Date** July 10, 2020
**Vehicle Identification Number** 2T3RFREV9FW****
**Summary of Complaint**
REAR HATCH STRUT SEIZED AND BROKE CAUSING REAR HATCH DOOR TO NOT CLOSE COMPLETELY, REMOTE AND DOOR RELEASE IN CAR INOPERABLE. I HAD MY CAR SERVICED AND ADVISOR EXPLAINED THAT WATER (FROM WEATHER) CAUSED RUST AND LEFT STRUT BROKE. THE RIGHT STRUT IS CORRODED BADLY AND RECOMMENDED TO REPLACE AS WELL. TOTAL COST WOULD BE 1386.00 INCLUDED LEFT STRUT PART (427.00), RIGHT STRUT PART (739.00) AND ABOUT 200.00 IN LABOR. I CALLED TOYOTA CORPORATE FOR COMPLAINS AND THEY SAID THAT THERE WAS NO RECALLS AND THEIR WARRANTY WAS 3YR/3000 MILES WHICH DID NOT APPLY TO MY SITUATION. I CALLED MULTIPLE TOYOTA PARTS DEPTS, SOME OUT OF STATE TO COMPARE PRICES AND THEY REMAINED THE SAME. ONE PARTS EMPLOYEE INFORMED ME THAT THIS PART I NEEDED TO PROVIDE MY VIN NUMBER BECAUSE THESE STRUTS SUPPLY IS SPARSE AND THEY NEEDED TO SUPPLY LOCAL CUSTOMERS. I ASKED WHY THERE WASN'T A RECALL AND HE AGREED THAT THERE SHOULD BE ONE. AGREED THAT THE DESIGN IS POOR AND EXPECTATION TO LUBRICATE JOINTS TO PREVENT WATER DAMAGE ( WHICH WAS NOT IN ANY OF MY MAINTENANCE MANUELS.). I HAVE THE EXTENDED WARRANTY WHEN I PURCHASED MY NEW RAV4 AND ADVISOR CALLED AND PRESENTED PICTURES, THE CLAIM WAS DENIED.

**NHTSA ID Number**: 11348761
**Incident Date** August 12, 2020
**Complaint Date** August 12, 2020
**Vehicle Identification Number** 2T3WFREV4EW****
**Summary of Complaint**
RUSTING INSIDE VEHICLE AND BOLTS FOR HATCH BACK IS RUSTING OUT.

**NHTSA ID Number:** 11363684
**Incident Date** October 9, 2020
**Complaint Date** October 10, 2020
**Vehicle Identification Number** 2T3YFREV4EW****
**Summary of Complaint**
I'VE HAD MULTIPLE ISSUES WITH THIS CAR. THE LOCK ACTUATORS ON ALL THE DOORS AND REAR HATCH CONSTANTLY BREAK,…

**NHTSA ID Number:** 11388262
**Incident Date** November 12, 2020
**Complaint Date** January 15, 2021
**Vehicle Identification Number** 2T3JFREV6HW****
**Summary of Complaint**
BACK HATCH IS FROZEN AND WILL NOT OPEN. AT FIRST IT OPENED A FEW INCHES, NOW IT DOESN'T OPEN AT ALL. JUST PURCHASED THIS USED

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**CLASS ACTION COMPLAINT**

VEHICLE IN JUNE! VERY EXPENSIVE REPAIR.*JB.

**NHTSA ID Number**: 11457243
**Incident Date** February 25, 2022
**Complaint Date** March 18, 2022
**Vehicle Identification Number** 2T3RWRFV5KW****
**Summary of Complaint**
Vehicle purchased two years ago developed a failure of the mechanism that opens and supports the rear hatch with no warning. This led to cracking of hinges and brackets, and mis-alignment of the hatch which prevented it from closing and latching. The original estimate for repairs would have made the owner liable for thousands of dollars. After reviewing evidence that this was not due to an accident or other abuse, Toyota agreed to a one-time 'goodwill' financial adjustment that reduced owner financial liability. But as reported in various Toyota owner forums, this is not an isolated incident: hatch opening mechanism failure has been experienced by owners of other Toyota products with various models and model years. A fundamental design flaw requires a remedy, not just repair to return it to its original, flawed, state.

**NHTSA ID Number:** 11479177
**Incident Date** August 12, 2022
**Complaint Date** August 13, 2022
**Vehicle Identification Number** 2T3RWRFV1KW****
**Summary of Complaint**
The rear hatch trunk doorr does not operate correctly. The hinges holding the door on could fail leaving the door to fly off the vehicle. Apparently this is a known problem on this make and model of this vehicle and toyota is unwilling to repair the problem.

**NHTSA ID Number:** 11481267
**Incident Date** August 23, 2022
**Complaint Date** August 25, 2022
**Vehicle Identification Number** 2T3DFREV9EW****
**Summary of Complaint**
Power lift rear hatch shocks. It's no longer available for inspection because I had the parts replaced on Aug. 24, 2022. Date of first incident UNKNOWN. Before the pandemic began, the rear hatch became inconsistent on opening and closing. When I took it to the dealership, they would reset it. I also took it on 2 occasions to another dealership with the same results. In a day or in a few days, it wouldn't open or close. I was doing grocery pick up so it could have been a hazard not only to me but to the grocery store staff. I couldn't rely on it. I'm a senior citizen. 50% of the reason I bought the SUV was for the power lift hatch. I could have injured my shoulders or my back trying to force it open or closed. Or I could have been injured loading and unloading groceries onto the floorboards behind the front seats. On Aug. 23, 2022 I spoke with the Service Advisor at the dealership and said I need it to be repaired. Do you have the parts? They did the repair the next day. These parts didn't have lamps or messages that were available to the driver. I don't know if there were any for the service technicians. Service Advisor said they have replaced power lift rear hatch shocks on other vehicles.

**NHTSA ID Number:** 11510469
**Incident Date** January 9, 2023
**Complaint Date** March 6, 2023
**Vehicle Identification Number** 2T3A1RFV5KC****
**Summary of Complaint**
Hatch hinge cracking, bending, and breaking causing hatch door to pull to one side. Hatch door pulling to one side caused the door to rub on the tail light when opening and closing and door doesn't not seal when shut. This issue was not caused by any foreign

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

objects or accidents. The issue is available for inspection. The issue has been seen by a dealership. The issue has not been inspected by any other entities. The first sign of the issue occurred in January 2023 with visible evidence the door was pulling to one side. The issue has continued to worsen.

**NHTSA ID Number:** 11513444
**Incident Date** March 16, 2023
**Complaint Date** March 23, 2023
**Vehicle Identification Number** 2T3RWRFV0LW****
**Summary of Complaint**
In preparing for a trip, the automatic tailgate went out of alignment and would not close. A local body shop diagnosed the issue as a bent hinge. There was no incident that caused this - the hinge appears to be insufficiently sturdy for a heavy tailgate. The body shop temporarily hammered the hinge back into place, but the seal of the tailgate is imperfect, allowing exhaust fumes to enter the cabin when driving at low speeds. This may also have been true before the gate failed to close, but was not noticed. This is beginning to show up on other RAV4s. The local Toyota dealer would not accept a warranty claim for the issue. A permanent repair is scheduled, but will require several weeks due to scheduling.

**NHTSA ID Number:** 11526697
**Incident Date** May 31, 2023
**Complaint Date** June 12, 2023
**Vehicle Identification Number** 2T3J1RFV5KW****
**Summary of Complaint**
The rear passenger side hinge of my lift gate is cracked on both sides. As a result, the lift gate does not open, close, or seal properly. The cracks were noticed a few weeks ago after multiple issues with the rear lift gate freezing as opening or closing. It has never been in an accident, nor has it ever been hit. The car has exclusively only been serviced at the Toyota dealership where it was bought. The rear liftgate issues have been brought up multiple times with no resolution. I've contacted the dealership about the hinges and they've told me that I need to take it to a private body shop to have repaired. Having the hinge of the liftgate cracked on both sides impacts the integrity of the rear of the car in a collision and the safety of the user one opening and closing lift gate should break entirely. I'm doing research on this issue online. It seems to be some thing. Other people have experience with the rear liftgate hinge. There's even a complaint about it on consumer affairs.

84.     In addition to being on notice of the Defect through NHTSA and other complaints, Defendants also directly learned of the Defect from their network of dealerships. Many of the customers who wrote online or to Toyota about their negative experiences with the Defect reported having taken their Class Vehicles into Toyota dealerships because of the Defect.

85.     Further, the internet is replete with examples of blogs and other websites where Class Members have complained of the exact same Defect in the Class Vehicles.[11]

---

[11] *See, e.g.*,

**CLASS ACTION COMPLAINT**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

86.     One prominent website, Consumer Affairs, contains thousands of complaints about the Class Vehicles, including complaints of the Defect: "Overall I like my car. My main issue now is that my trunk stopped opening/closing when I press the button. Unfortunately, and very impractical it doesn't have a manual way of opening (keyhole)… I'm still in the process of dealing with the dealership about my trunk and breaks at 30,000 miles. I should know by tomorrow."[12]

87.     Further, upon information and belief, Toyota itself has seen a significant increase in warranty claims relating to the Defect.

88.     Despite Defendants' knowledge of the Defect, they failed to disclose it to Plaintiff Hughes and other Class Members.

### 5.     Toyota's Long History of Defective Doors in its Fleet

89.     Toyota knew or should have known about the Defect affecting the hinges contained in the power liftgate due to the slew of problems it has faced over the past two decades related to its fleet of vehicles.

90.     Toyota has been the target of a class action lawsuit alleging issues in its fleet, and has spent billions of dollars making the necessary repairs.[13]

/ / /

/ / /

---

https://www.reddit.com/r/rav4club/comments/py70as/comment/hr5ihse/?utm_source=share&utm_medium=web2x&context=3; https://www.rav4world.com/threads/rear-liftgate-hinge.305832/ (last visited February 15, 2024);
https://www.reddit.com/r/rav4club/comments/py70as/power_liftgate_hinges_cracked_on_2019_xle/ (last visited February 15, 2024); https://www.rav4world.com/threads/2018-xle-hybrid-tailgate-failing.319206/ (last visited February 15, 2024); https://www.rav4world.com/threads/power-hatch-not-closing.320828/#post-2950250 (last visited February 15, 2024);
https://www.rav4world.com/threads/lift-gate-issue.320514/ (last visited February 15, 2024);
https://www.rav4world.com/threads/power-hatch-not-closing.320828/ (last visited February 15, 2024); https://www.rav4world.com/threads/2020-liftgate-hinges-and-toyotas-responses.327021/ (last visited February 15, 2024).

[12] The complaint is reproduced as it appears online. Any typographical errors are attributable to the original author.

[13] *See* https://www.autoblog.com/2016/11/14/toyota-3-billion-settlement-rusty-truck-frames/ (last visited February 15, 2024).

1
2
3

91.     Further, Toyota has issued several Technical Service Bulletins and Quality Compliance announcements acknowledging issues with its doors, including one acknowledging issues with the component parts such as hinges in the rear doors.[14]

4
5
6

92.     Specifically, in 2012, Toyota issued a TSB acknowledging problems with its hinges causing premature failure of the power back door across several model year Highlander vehicles.[15]

7
8
9

93.     Toyota's long history of investigating, testing, and identifying design and/or manufacturing defects contained in its vehicles – especially issues in door structures – establishes that Toyota knew or should have known of the Defect in the Class Vehicles.

10

**D.     Toyota Conceals the Defect and Continues Selling Class Vehicles**

11

94.     Toyota describes its vehicles as being quality, dependable, and reliable.[16]

12
13
14
15
16
17

95.     Defendants could have provided Class Vehicle owners and lessees with adequate and satisfactory notice of the Defect, including through their sales and marketing representations, their network of agents and dealers, in owners' manuals, on their website, in Class Vehicle brochures, and on the window stickers. Instead of notifying the public and/or the Class of the Defect, Defendants actively concealed this material information and continued to sell and lease Class Vehicles.

18
19
20
21

96.     Despite Toyota's representations of reliability and safety, the Defect prevents the power liftgate in the Class Vehicles from working as directed and poses a potential safety hazard for Class Members who may be injured while attempting to use the malfunctioning power liftgate.

22

/ / /

23

24
25
26
27
28

---

[14] *See* https://static.nhtsa.gov/odi/tsbs/2012/MC-10133998-9999.pdf (last visited February 15, 2024); https://static.nhtsa.gov/odi/tsbs/2019/MC-10158571-9999.pdf (last visited February 15, 2024); https://static.nhtsa.gov/odi/tsbs/2019/MC-10169416-9999.pdf (last visited February 15, 2024); https://static.nhtsa.gov/odi/tsbs/2017/MC-10132424-9999.pdf (last visited February 15, 2024); https://static.nhtsa.gov/odi/tsbs/2020/MC-10174910-9999.pdf (last visited February 15, 2024). *See also supra* Sections C.2,3.

[15] https://static.nhtsa.gov/odi/tsbs/2012/MC-10133998-9999.pdf (last visited February 15, 2024). *See also supra* Section C.2.

[16] *See, e.g., supra* note 4, 5.

**CLASS ACTION COMPLAINT**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

97.     Toyota knew of the Defect before June 2015 because it had directed its dealers to provide repairs and replacements of the defective parts.

98.     Nor has Toyota developed an effective fix for the sudden failures the Defect causes. Indeed, Toyota's purported fixes of lubricating the hinges and instructing Class Members to not use the power liftgate are simply band-aids and do not remedy the underlying cause of the Defect: insufficiently manufactured parts.

99.     As a consequence of Toyota's actions and inaction, Class Vehicle owners have been deprived of the benefit of their bargain, lost full use of their Class Vehicles, and incurred lost time and out-of-pocket costs, including payments for (1) the costs for diagnosis and (2) the costs to make the necessary repairs. The Class Vehicles have also suffered a diminution in value due to the Defect.

100.     Had Plaintiff Hughes and Class Members known about the Defect, they would not have purchased or leased their Class Vehicles or would have paid significantly less for them.

**E.     Defendants' Warranty Practices**

101.     In its New Vehicle Limited Warranty, Toyota agrees to repair defects reported within the earlier of three years or 36,000 miles. The Warranty Information Booklet included with all Class Vehicles provides that, "[t]his warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" on pages 15–16." The listed exceptions do not apply here.[17]

102.     Toyota evades its warranty obligations by claiming that the Defect is not a defect, and thus denies warranty coverage to repair the Defect.

/ / /

/ / /

---

[17] *See* https://assets.sia.toyota.com/publications/en/omms-s/T-MMS-19RAV4HV/pdf/T-MMS-19RAV4HV.pdf?_gl=1*essl9o*_tmna_ga*NDg3NTc5NDM4LjE3MDY2MzEyODU.*_tmna_ga_E P43E5EFVZ*MTcwNzQwMzMxMi4xMC4xLjE3MDc0MDYyNTguMTMuMC4w (last visited February 15, 2024).

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

103.    Moreover, some Class Vehicles manifest the Defect just outside Defendants' warranty period. But the mileage and temporal limitations Defendants impose on their warranty are unconscionable and unenforceable.

104.    Defendants provide the New Vehicle Limited Warranty to buyers after a purchase is complete. Buyers like Plaintiff Hughes and Class Members lack pre-sale knowledge of the Defect or the ability to bargain as to the terms of the Defendants' warranty. Accordingly, the limitations Defendants impose on the Limited Warranty—and their efforts to disclaim any implied warranties—are procedurally unconscionable because there was unequal bargaining power between Defendants and Plaintiff Hughes and the Class Members, because, at the time of purchase, Plaintiff Hughes and the other Class Members had no other options for purchasing from Defendants alternative warranty coverage for the Class Vehicles.

105.    All of the purported limitations on the warranty, including the time and mileage limits, are also substantively unconscionable. Defendants knew Class Vehicles suffered from the Defect and that the Defect would continue to pose safety risks after the warranty purportedly expired, yet failed to disclose the Defect to Plaintiff Hughes and the other Class Members while continuing to market Class Vehicles as dependable and reliable. Defendants' enforcement of those limitations is thus harsh and shocks the conscience.

106.    Defendants' efforts to evade their warranty obligations with respect to the known Defect, coupled with their refusal to cover the Defect if it manifests outside the warranty's stated term, deprives Plaintiff Hughes and Class Members of the benefit of their bargain, forcing them to pay out of pocket to repair a defect present in Class Vehicles at the time of purchase.

## VI.    CLASS ACTION ALLEGATIONS

107.    Plaintiff Hughes brings this action on his own behalf, and on behalf of a nationwide class pursuant to Rules 23(a), 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure.

**Nationwide Class**:
All persons in the United States who bought or leased a Class Vehicle.

**CLASS ACTION COMPLAINT**

108.    Pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiff Hughes also seeks to represent the following State Subclass:

**California Subclass**:
All persons or entities who are: (1) current or former owners and/or lessees of a Class Vehicle; and (2) reside in California or purchased a Class Vehicle for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a), in California.

109.    Excluded from the Class are Defendants, any affiliates, employees, officers and directors; persons or entities that purchased the Class Vehicles for resale; and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the class definitions in light of discovery and/or further investigation.

110.    **Numerosity:** The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, as such information is in the sole possession of Defendants and is obtainable by Plaintiff only through the discovery process, publicly available sales information shows that Defendants sold or leased hundreds of thousands of each model of Class Vehicles nationwide. Members of the Class can be readily identified based upon, *inter alia*, the records (including databases, e-mails, and dealership records and files) maintained by Toyota in connection with its sales and leases of Class Vehicles.

111.    **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class and predominate over any individual questions. These common legal and factual questions include, but are not limited to:

a.   whether Toyota engaged in the conduct alleged herein;

b.   whether Class Vehicles are unfit for their ordinary purpose;

c.   whether Toyota placed Class Vehicles into the stream of commerce in the United States with knowledge of the Defect;

d.   whether Toyota knew or should have known of the Defect, and if so, for how long;

e.   when Toyota became aware of the Defect in the Class Vehicles;

f.   whether Toyota knowingly failed to disclose the existence and cause of the Defect in the Class Vehicles;

g.   whether Toyota's conduct alleged herein violates consumer protection laws, warranty laws, and other laws as asserted herein;

h.   whether Plaintiff and Class Members overpaid for their Class Vehicles as a result of the Defect;

i.   whether Plaintiff and Class Members have suffered an ascertainable loss as a result of their loss of their Class Vehicles' features and functionality;

j.   whether Plaintiff and Class Members are entitled to damages, including punitive damages, as a result of Toyota's conduct alleged herein, and if so, the amount or proper measure of those damages; and

k.   whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to restitution and/or injunctive relief.

112.   **Typicality:** Plaintiff's claims are typical of the claims of the Class because the Plaintiff purchased a Class Vehicle containing the Defect, and each member of the Class also either purchased or leased a Class Vehicle. Plaintiff and Class Members sustained economic harm in the same manner by Toyota's uniform course of conduct alleged herein. Plaintiff and Class Members have the same or similar claims against Toyota relating to the conduct alleged herein, and the same conduct on the part of Toyota gives rise to all the claims for relief.

113.   **Adequacy**: Plaintiff is an adequate representative of the Class, whose interests do not conflict with those of any other Class Member. Plaintiff has retained counsel competent and experienced in complex class action litigation—including consumer warranty and automobile defect class actions—who intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and their counsel.

114.   **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of these claims, including from the need for expert witness testimony

**CLASS ACTION COMPLAINT**

on highly technical and economic issues bound up with the claims. Individualized litigation also would risk inconsistent or contradictory judgments and increase the delay and expense to all parties and the courts. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

115.   **Injunctive Relief**: Toyota has acted, and refuses to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT ("MMWA")
### (15 U.S.C. §§ 2301 *ET SEQ.*)
### (NATIONWIDE CLASS)

116.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

117.   Plaintiff Hughes brings this claim on behalf of himself and the Class.

118.   Plaintiff is a "consumer" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

119.   Toyota is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

120.   The Class Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

121.   15 U.S.C. § 2310(d) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

122.   Toyota's express warranties are written warranties within the meaning of the MMWA, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under the MMWA, 15 U.S.C. § 2301(7).

123.   Toyota breached its express and implied warranties as described in more detail above. Without limitation, the Class Vehicles contain the Defect that causes the power liftgate

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

to become inoperable, which renders the vehicles unfit for their intended use and unsafe. Toyota refused to honor its warranties by repairing or replacing the defective components.

124.    Plaintiff Hughes has had sufficient direct dealings with either Toyota or its agents, including its authorized dealerships, to establish privity of contract between Toyota on the one hand and Plaintiff on the other hand. Toyota directly communicated with Plaintiff Hughes through its agents and dealerships. In addition, Toyota directly communicated with Plaintiff Hughes via its television, print, and online advertisements. Toyota also issued vehicle warranties directly to Plaintiff Hughes. Plaintiff and other Class Members also relied on Toyota's direct representations regarding the high quality, durability, reliability, dependability, and functionality of Toyota vehicles in making their purchasing decision.

125.    Plaintiff afforded Toyota a reasonable opportunity to cure its breach of written warranties and any further opportunity would be unnecessary and futile here as Toyota has failed to remedy the Defect.

126.    At the time of sale or lease of each Class Vehicle, Toyota knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but it nonetheless failed to fix the Defect and/or disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff resort to an informal dispute resolution procedure under the MMWA and/or afford Toyota a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

127.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

128.    Plaintiff individually and on behalf of the other Class Members, seeks all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial.

/ / /

**CLASS ACTION COMPLAINT**

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(NATIONWIDE CLASS OR, ALTERNATIVELY, CALIFORNIA CLASS)**

129.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

130.    Plaintiff brings this claim individually and on behalf of the California Class

131.    Toyota is a "merchant" as defined under the Uniform Commercial Code ("UCC").

132.    The Class Vehicles are "goods" as defined under the UCC.

133.    Toyota provides a Limited Warranty with every Class Vehicle that expressly warrant that Toyota will repair any defects in materials and/or workmanship free of charge during the applicable warranty periods. The Defect is a defect in material and/or workmanship, and therefore should have been repaired at no cost under the Limited Warranty.

134.    Toyota breached its written warranties by failing to provide an adequate repair when Plaintiff and the Class Members presented their Class Vehicles to authorized Toyota dealers following manifestation of the Defect. Despite its knowledge that Plaintiff's and Class Members' vehicles were exhibiting the symptoms of the Defect, instead of providing an effective repair, Toyota claimed that the necessary repairs to replace the component parts of the power liftgate assembly would not be covered under warranty.

135.    Toyota failed to perform its written warranty obligations as part of a uniform pattern and practice that extended to all of its dealerships.

136.    The warranties formed the basis of the bargain that was reached when Plaintiff and Class Members purchased or leased their Class Vehicles. Plaintiff and Class Members experienced the Defect within the warranty period and presented their Class Vehicles for repairs within the warranty period. Despite the existence of the express warranty and multiple repair attempts, Toyota failed to inform Plaintiff and Class Members of the Defect and failed to adequately repair the Defect.

137.    Plaintiff and the other Class Members have had sufficient direct dealings with either Toyota or its agents, including its authorized dealerships, to establish privity of contract

29
**CLASS ACTION COMPLAINT**

between Toyota on the one hand and Plaintiff and each Class Member on the other hand. Toyota directly communicated with Plaintiff and Class Members through its agents and dealerships. In addition, Toyota directly communicated with Plaintiff and Class Members via its television, print, and online advertisements. Toyota also issued vehicle warranties directly to Plaintiff and Class Members. Plaintiff and other Class Members also relied on Toyota's direct representations regarding the high quality, durability, reliability, dependability, and functionality of Toyota vehicles in making their purchasing decision.

138.   As a result of Toyota's breach of its express warranty, Plaintiff and Class Members have suffered economic damages including, but not limited to, the loss of the benefit of their bargain, loss of vehicle use, diminished value, substantial loss in value and resale value, out-of-pocket expenses for maintenance and service expenses to fix the Defect, as well as towing, roadside assistance, and alternative transportation costs that they otherwise would not have incurred but for the Defect.

139.   Toyota was provided notice of the issues complained of herein within a reasonable time by numerous complaints online, directly to Toyota and its authorized dealers, Class Members taking their vehicles to its dealers, by Plaintiff on February 8, 2024, and this lawsuit.

140.   Plaintiff and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of such obligations as a result of Toyota's conduct described herein.

141.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Toyota to limit its express warranty in a manner that would exclude or limit coverage for the Defect, including benefit-of-the-bargain, incidental, or consequential damages, would cause the warranty to fail of its essential purpose. Plaintiff and Class Members have presented their Class Vehicles to Toyota's authorized dealers on numerous occasions and Toyota has failed to remedy the Defect. As a result, Plaintiff and Class Members are left with defective vehicles that do not function as intended and, therefore, have been deprived of the benefit of their bargains.

**CLASS ACTION COMPLAINT**

1

2

3

4

5

6

142.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Toyota to limit its express warranty in a manner that would exclude or limit coverage for the Defect would be unconscionable. Toyota's warranties were adhesive and did not permit negotiations. Toyota possessed superior knowledge of the Defect, which is a latent defect, prior to offering Class Vehicles for sale. Toyota concealed and did not disclose this Defect, and Toyota did not remedy the Defect prior to sale (or afterward).

7

8

### COUNT III
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (NATIONWIDE CLASS OR, ALTERNATIVELY, THE CALIFORNIA CLASS)

9

10

143.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

11

144.    Plaintiff brings this claim individually and on behalf of the California Class.

12

145.    Toyota is a "merchant" as defined under the UCC.

13

146.    The Class Vehicles are "goods" as defined under the UCC.

14

15

16

17

18

19

147.    A warranty that the Class Vehicles were in merchantable quality and condition arises by operation of law with respect to transactions for the purchase and lease of Class Vehicles. Toyota impliedly warranted that the Class Vehicles were of good and merchantable condition and quality, fit for their ordinary intended use, including with respect to safety, reliability, operability, and the absence of material defects, and that the vehicles would pass without objection in the automotive trade.

20

21

22

148.    The Class Vehicles, when sold and leased, and at all times thereafter, were not in merchantable condition or fit for the ordinary purpose for which vehicles are used. The Class Vehicles were not merchantable in that the Defect renders the power liftgate inoperable.

23

24

25

149.    The Defect was present in the Class Vehicles when they were placed into the stream of commerce and inevitably manifests well before the end of the useful life of the Class Vehicles.

26

27

28

150.    Toyota was provided notice of the issues complained of herein within a reasonable time by numerous complaints online, directly to Toyota and its authorized dealers,

31

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Class Members taking their vehicle to its dealers, by Plaintiff on February 8, 2024, and the instant lawsuit.

151.   Plaintiff and the other Class Members have had sufficient direct dealings with either Toyota or its agents, including its authorized dealerships, to establish privity of contract between Toyota on the one hand and Plaintiff and each Class Member on the other hand. Toyota directly communicated with Plaintiff and Class Members through its agents, including its authorized dealerships, during the sales process. In addition, Toyota directly communicated with Plaintiff and Class Members via its television, print, and online advertisements. Toyota also provided its warranties directly to Plaintiff and Class Members. Plaintiff and other Class Members relied on Toyota's direct representations regarding the high quality, durability, reliability, dependability, and functionality of Toyota vehicles in making their purchasing decision.

152.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Toyota to limit its express warranty in a manner that would exclude or limit coverage for the Defect would be unconscionable. Toyota's warranties were adhesive and did not permit negotiations. Toyota possessed superior and exclusive knowledge of the Defect, which is a latent defect, prior to offering Class Vehicles for sale. Toyota concealed and did not disclose this Defect, and Toyota did not remedy the Defect prior to sale (or afterward).

153.   As a direct and proximate result of the breach of these warranties, Plaintiff and Class Members were injured and are entitled to damages.

**COUNT IV**
**VIOLATIONS OF THE SONG–BEVERLY CONSUMER WARRANTY ACT**
**FOR BREACH OF EXPRESS WARRANTY**
**CAL. CIV. CODE §§ 1790–1795.8**
**(CALIFORNIA SUBCLASS)**

154.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

155.   Plaintiff Hughes and the California Subclass members who purchased or leased the Class Vehicles are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

**CLASS ACTION COMPLAINT**

156.   The class vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

157.   Toyota is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

158.   Toyota made express warranties to Plaintiff and the California Subclass members within the meaning of Cal. Civ. Code §§ 1791.2 & 1793.2(d).

159.   Toyota breached these express warranties by selling and leasing defective Class Vehicles that required repair or replacement within the applicable warranty period. Despite a reasonable number of attempted repairs, Toyota has failed to adequately repair the Defect.

160.   Toyota has failed to promptly replace or buy back the vehicles of Plaintiff and the proposed California Subclass members as required under Cal. Civ. Code § 1793.2(d)(2).

161.   As a direct and proximate result of Toyota's breach of its express warranties, Plaintiff and the California Subclass members received goods in a condition that substantially impairs their value to Plaintiff and the other Subclass members. Plaintiff and the California Subclass members have been damaged as a result of, *inter alia*, overpaying for the Class Vehicles, the diminished value of the Class Vehicles, the Class Vehicles' malfunctioning, out-of-pocket costs incurred, and actual and potential increased maintenance and repair costs.

162.   Under Cal. Civ. Code §§ 1793.2 & 1794, Plaintiff and the California Subclass members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Class Vehicles or the overpayment or diminution in value of their Class Vehicles as well as reimbursement of out-of-pocket expenses incurred as a result of the Defect.

163.   Under Cal. Civ. Code § 1794(d), (e), Plaintiff and the California Subclass members are entitled to reasonable costs and attorneys' fees.

/ / /

/ / /

/ / /

/ / /

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**COUNT V**
**VIOLATIONS OF THE SONG–BEVERLY CONSUMER WARRANTY ACT**
**FOR BREACH OF IMPLIED WARRANTY**
**CAL. CIV. CODE §§ 1790–1795.8**
**(CALIFORNIA SUBCLASS)**

164.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

165.   Plaintiff and the California Subclass members who purchased or leased the Class Vehicles are "buyers" within the meaning of Cal. Civ. Code. § 1791(b).

166.   The class vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

167.   Toyota is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

168.   Toyota impliedly warranted to Plaintiff and the California Subclass members that Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.

169.   Section 1791.1(a) provides that: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods must meet each of the following:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or label.

170.   The Defect in the Class Vehicles is present in them when sold and substantially certain to manifest. The Class Vehicles would not pass without objection in the automotive trade because the Defect causes the power liftgate to fail to operate as intended. The Defect thus affects the central functionality of the power liftgate, leading to thousands of dollars in repair expenses and inconvenient service calls.

171.  Because the Defect prevents Class Members from accessing the rear of the vehicle, the Class Vehicles are not fit for the ordinary purposes for which such vehicles are used.

172.  Class Vehicles are not adequately labeled because the labeling fails to disclose the Defect and does not advise the California Subclass members of this Defect.

173.  Any attempt by Toyota to disclaim its implied warranty obligations under the Song-Beverly Act is ineffective due to its failure to adhere to Sections 1792.3 and 1792.4. Those sections of the Civil Code provide that, in order to validly disclaim the implied warranty of merchantability, a manufacturer must "in simple and concise language" state each of the following: "(1) The goods are being sold on an 'as is' or 'with all faults' basis. (2) The entire risk as to the quality and performance of the goods is with the buyer. (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair." Cal. Civ. Code § 1792.4(a). Toyota's attempted implied warranty disclaimer does not conform to these requirements.

174.  The Defect deprived Plaintiff and the California Subclass members of the benefit of their bargain and resulted in Class Vehicles being worth less than what Plaintiff and other California Subclass members paid.

175.  As a direct and proximate result of Toyota's breach of its implied warranties, Plaintiff and California Subclass members received goods that contain a defect that substantially impairs their value. Plaintiff and the California Subclass members have been damaged by the diminished value of the vehicles, the vehicles' malfunctioning, out-of-pocket costs incurred, and actual and potential increased maintenance and repair costs.

176.  Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff and California Subclass members are entitled to damages and other legal and equitable relief, including, *inter alia*, benefit-of-the-bargain damages, overpayment or diminution in value of their Class Vehicles, and reasonable attorneys' fees and costs.

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**COUNT VI**
**VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**("CLRA")**
**CAL. CIV. CODE §§ 1750–1785**
**(CALIFORNIA SUBCLASS)**

177.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

178.    Plaintiff and the members of the California Subclass are "consumers" as defined under the CLRA. See Cal. Civ. Code § 1761(d).

179.    Toyota is a "person" as defined under the CLRA. See Cal. Civ. Code § 1761(c).

180.    Class Vehicles are "goods" as defined under the CLRA. See Cal. Civ. Code § 1761(a).

181.    The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

182.    Toyota engaged in unfair and deceptive acts in violation of the CLRA by the practices described above and by knowingly and intentionally concealing from Plaintiff and the California Subclass members that the Class Vehicles suffer from the Defect (and the costs, risks, and diminished value of the Class Vehicles as a result of this Defect). Toyota's conduct violated at least the following enumerated CLRA provisions:

    a.    Toyota represented that the Class Vehicles have characteristics, uses, or benefits that they do not have, which is in violation of section 1770(a)(5);

    b.    Toyota represented that the Class Vehicles are of a particular standard, quality, or grade when, in fact, they are not, which is in violation of section 1770(a)(7);

    c.    Toyota advertises its Class Vehicles with the intent not to sell them as advertised, which is in violation of section 1770(a)(9);

**CLASS ACTION COMPLAINT**

d. Toyota represents that its Class Vehicles have been supplied in accordance with a previous representation when they have not, which is in violation of section 1770(a)(16); and

e. Toyota inserts an unconscionable provision into its warranty in violation of section 1770(a)(19).

183. Toyota's unfair or deceptive acts or practices occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the purchasing public.

184. Toyota knew, should have known, or was reckless in not knowing that the Class Vehicles were defective, would fail prematurely, and were not suitable for their intended use.

185. Toyota was under a duty to Plaintiff and the California Subclass members to disclose the defective nature of the Class Vehicles and the Defect because:

l. Toyota knew of but actively concealed the Defect from Plaintiff and the California Subclass;

m. Toyota was in a superior and exclusive position to know the true facts about the Defect, which affects the central functionality of the vehicle and poses safety concerns, and Plaintiff and the Subclass members could not reasonably have been expected to discover that the Class Vehicles contained the Defect until it manifested, which Toyota knew; and

n. Toyota made partial representations regarding the reliability, safety, and quality but suppressed material facts regarding the Defect.

186. The facts that Toyota misrepresented to and concealed from Plaintiff and the other California Subclass members are material because a reasonable consumer would have

considered them to be important in deciding whether to purchase their Class Vehicles or pay a lesser price for them.

187.    The Defect poses a serious safety defect and affects the central functionality of a vehicle because it renders the vehicle inoperable.

188.    In failing to disclose the material Defect, Toyota has knowingly and intentionally concealed material facts in breach of its duty to disclose.

189.    Plaintiff and the California Subclass have suffered injury in fact and actual damages resulting from Toyota's material misrepresentations and omissions, including by paying an inflated purchase price for their Class Vehicles and incurring additional out-of-pocket expenses to deal with the Defect. Had Plaintiff and the Subclass known about the defective nature of the Class Vehicles and the Defect, they would not have purchased or leased their Class Vehicles or would have paid less in doing so.

190.    As a direct and proximate result of Toyota's unfair and deceptive conduct, therefore, Plaintiff and the California Subclass members have been harmed.

191.    Pursuant to Cal. Civ. Code § 1782(a), Plaintiff Hughes sent a letter to Toyota notifying it of its CLRA violations and providing them with an opportunity to correct their business practices. If Toyota does not correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including for actual, restitutionary, and punitive damages under the CLRA.

192.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiff, individually and on behalf of the California Subclass, seeks injunctive relief for Toyota's violation of the CLRA.

193.    Additionally, pursuant to Cal. Civ. Code §§ 1780 and 1781, Plaintiff, individually and on behalf of the California Subclass, seeks compensatory and punitive damages under the CLRA and to recover their attorneys' fees and costs.

194.    Plaintiff's CLRA venue declaration is attached as an exhibit to this complaint in accordance with Cal. Civ. Code § 1780(d).

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**COUNT VII**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**
**CAL. BUS. & PROF. CODE §§ 17200–17210**
**(CALIFORNIA SUBCLASS)**

195.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

196.    The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Toyota's conduct violates each of these prohibitions.

### Unlawful Conduct

197.    Toyota's conduct is unlawful, in violation of the UCL, because, as set forth herein, it violates the Song–Beverly Consumer Warranty Act, the MMWA, and the CLRA.

### Unfair Conduct

198.    Toyota's conduct is unfair because it violated California public policy, legislatively declared in the Song–Beverly Consumer Warranty Act, which requires a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes.

199.    Toyota acted in an immoral, unethical, oppressive, and unscrupulous manner, in at least the following respects:

a. Selling Plaintiff and California Subclass members defective Class Vehicles;

b. Failing to disclose the Defect despite the opportunity to do so in numerous locations that people in the market for a vehicle would be likely to encounter;

c. Directing and furnishing replacement parts it knew would not adequately remedy the defect, and repairing defective parts with more defective parts and otherwise failing to adequately remedy the Defect during the warranty period;

d. Refusing to repair or replace the Class Vehicles when the known Defect manifested outside the warranty period;

e. Failing to exercise adequate quality control and due diligence over the Class Vehicles before placing them on the market; and

f. Failing to acknowledge the scope and severity of the Defect, refusing to acknowledge the Class Vehicles are defective, and failing to provide adequate relief to Plaintiff and California Subclass members.

39

200.    The gravity of the harm resulting from Toyota's unfair conduct outweighs any potential utility of the conduct. The practice of selling defective Class Vehicles without providing an adequate remedy to cure the Defect harms the public at large and is part of a common and uniform course of wrongful conduct.

201.    There are reasonably available alternatives that would further Toyota's business interests of increasing sales and preventing false warranty claims. For example, Toyota could have: (a) acknowledged the Defect and provided a permanent, effective fix for the Defect; and/or (b) disclosed the Defect prior to prospective consumers' purchases.

202.    The harm from Toyota's unfair conduct was not reasonably avoidable by consumers. The Class Vehicles all suffer from the Defect, and Toyota has failed to disclose it. Plaintiff and California Subclass members did not know of, and had no reasonable means of discovering, the Defect.

### Fraudulent Conduct

203.    Toyota's conduct is fraudulent in violation of the UCL. Toyota's fraudulent acts include knowingly and intentionally concealing from Plaintiff and the California Subclass members the existence of the Defect and falsely marketing and misrepresenting the Class Vehicles as being functional and not possessing a defect that would render the power liftgates inoperable.

204.    Toyota's misrepresentations and omissions alleged herein caused Plaintiff and the California Subclass members to purchase or lease their Class Vehicles or pay more than they would have had Toyota disclosed the Defect.

205.    At all relevant times, Toyota had a duty to disclose the Defect because it had superior and exclusive knowledge of the Defect, which affects the central functionality of the vehicle and creates a safety risk for drivers and passengers, and because Toyota made partial representations about the reliability, quality, and safety of the Class Vehicles but failed to fully disclose the Defect.

206.    Accordingly, Plaintiff and California Subclass members have suffered injury in fact, including lost money or property, as a result of Toyota's unlawful, unfair, and fraudulent

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**CLASS ACTION COMPLAINT**

acts. Absent these acts, Plaintiff and California Subclass members would not have purchased or lease their Class Vehicles at the prices they paid or would not have purchased or leased them at all.

207.   Plaintiff seeks appropriate relief under the UCL, including such orders as may be necessary: (a) to enjoin Toyota from continuing its unlawful, unfair, and fraudulent acts or practices, and (b) to restore Plaintiff and California Subclass members any money Toyota acquired by its unfair competition, including restitution. Plaintiff also seeks reasonable attorneys' fees and expenses under applicable law.

**COUNT VIII**
**FRAUDULENT CONCEALMENT**
**(CALIFORNIA SUBCLASS)**

208.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

209.   Toyota made material omissions concerning a presently existing or past fact in violation of the common law. Toyota did not fully and truthfully disclose to its customers the true nature of the Defect. A reasonable consumer would not have expected the Defect in a new vehicle.

210.   Toyota made these omissions with knowledge of their falsity and with the intent that Plaintiff and Class Members rely upon them.

211.   The facts concealed, suppressed, and not disclosed by Toyota to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Class Vehicles at all or at the offered price.

212.   Toyota had a duty to disclose the true quality and reliability of the Class Vehicles because the knowledge of the Defect and its details were known and/or accessible only to Toyota; Toyota had superior knowledge and access to the relevant facts; and Toyota knew the facts were not known to, or reasonably discoverable by, Plaintiff and Class Members. Toyota also had a duty to disclose because it made many affirmative representations about the qualities and reliability of its vehicles, including references as to safety and general operability, as set

**CLASS ACTION COMPLAINT**

forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual reliability of their vehicles.

213.   Had Plaintiff and the Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less in doing so. Thus, Plaintiff and the other Class Members were fraudulently induced to lease or purchase Class Vehicles containing the Defect.

214.   Plaintiff and Class Members reasonably relied on Toyota's material omissions and suffered damages as a result. Toyota's conduct was willful, wanton, oppressive, reprehensible, and malicious. Consequently, Plaintiff and Class Members are entitled to an award of punitive damages.

**COUNT IX**
**UNJUST ENRICHMENT**
**IN THE ALTERNATIVE TO PLAINTIFF'S CLAIMS AT LAW**
**(California Subclass)**

215.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

216.   This claim is pleaded in the alternative to the other claims set forth herein.

217.   As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from the purchase and lease of Class Vehicles that contain the Defect.

218.   Toyota has voluntarily accepted and retained these profits and benefits, knowing that, as a result of its misconduct alleged herein, Plaintiff and the Class were not receiving Class Vehicles of the quality, nature, fitness, reliability, safety, or value that Toyota had represented and that a reasonable consumer would expect. Plaintiff and the Class Members expected that when they purchased or leased a Class Vehicle, it would not contain a Defect that renders the power liftgate inoperable.

219.   Toyota has been unjustly enriched by its deceptive, wrongful, and unscrupulous conduct and by its withholding of benefits and unearned monies from Plaintiff and the Class rightfully belonging to them.

**CLASS ACTION COMPLAINT**

220.    Equity and good conscience militate against permitting Toyota to retain these profits and benefits from its wrongful conduct. They should accordingly be disgorged or placed in a constructive trust so that Plaintiff and Class Members can obtain restitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests that this Court enter an Order against Toyota providing for the following:

A.    Certification of the proposed Class and/or Subclass, appointment of Plaintiff and his counsel to represent the Class, and provision of notice to the Class;

B.    An order permanently enjoining Toyota from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    Injunctive relief in the form of a recall or free replacement program;

D.    Equitable relief, including in the form of buy back of the Class Vehicles;

E.    Costs, restitution, damages, including punitive damages, penalties, and disgorgement in an amount to be determined at trial;

F.    An Order requiring Toyota to pay pre- and post-judgment interest as provided by law;

G.    An award of reasonable attorneys' fees and costs as permitted by law; and

H.    Such other or further relief as may be appropriate.

Dated: February 15, 2024          NYE, STIRLING, HALE, MILLER & SWEET, LLP

By:  */s/ Alison M. Bernal*

Alison M. Bernal, Esq. (SBN 264629)
alison@nshmlaw.com
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Matthew D. Schelkopf (*pro hac vice* forthcoming)
mds@sstriallawyers.com
Joseph B. Kenney (*pro hac vice* forthcoming)
jbk@sstriallawyers.com
**SAUDER SCHELKOPF**
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Facsimile: (610) 421-1326

*Attorneys for Plaintiff and the Proposed Classes*

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**CLASS ACTION COMPLAINT**

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial for all claims so triable.

Dated: February 15, 2024

NYE, STIRLING, HALE, MILLER & SWEET, LLP

By:  */s/ Alison M. Bernal*

Alison M. Bernal, Esq. (SBN 264629)
alison@nshmlaw.com
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

Matthew D. Schelkopf (*pro hac vice* forthcoming)
mds@sstriallawyers.com
Joseph B. Kenney (*pro hac vice* forthcoming)
jbk@sstriallawyers.com
**SAUDER SCHELKOPF**
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Facsimile: (610) 421-1326

*Attorneys for Plaintiff and the Proposed Classes*

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**CLASS ACTION COMPLAINT**